**Tamara DIAZ, Plaintiff,**

v.

**KUBLER CORPORATION doing business as Alternative Recovery Management, Defendant.**

**Case No. 12cv1742–MMA–BGS.**

United States District Court, S.D. California.

Nov. 6, 2013.

Andre L. Verdun, Crowley Law Group, Eric A. Laguardia, Laguardia Law, San Diego, CA, for Plaintiff.

Mark Gerald Spencer, Law Offices of Mark G. Spencer, San Diego, CA, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

MICHAEL M. ANELLO, District Judge.

Currently before the Court is Plaintiff Tamara Diaz's motion for summary judgment or, in the alternative, partial summary judgment on her claims under the Fair Debt Collection Practices Act ("FDCPA") and California's Fair Debt Collection Practices Act ("Rosenthal Act"). [Doc. No. 51.] The Court, in its discretion, found the motion suitable for determination on the papers and without oral argument, pursuant to Civil Local Rule 7.1(d)(1). For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion for summary judgment.

### BACKGROUND [1]

In Spring of 2011, Plaintiff received dental services from Parkway Dental Group ("Parkway"). As a result of these services, Plaintiff incurred a debt [2] with Parkway. To collect Plaintiff's debt, Parkway sought the services of Alternative Recovery Management ("Defendant"), a third-party debt collector.

Defendant assigned its employee, Joshua Flores ("Flores"), to Plaintiff's debt collection case. As part of his job, Flores makes telephone calls to consumers regarding collection of their delinquent debt. During a phone call with a consumer, Flores makes contemporaneous notes into a computer system.[3] When Flores notifies

---

1. The facts cited herein are taken from the parties' separate statements of undisputed facts, [Doc. Nos. 51–2, 52–1], and are not in dispute.

2. Plaintiff does not dispute that she incurred a debt for these services but claims that she disputes the debt amount. [Doc. No. 51–8 ("Diaz Decl.") ¶¶ 6–8.]

3. Defendant uses the computer software Columbia Ultimate Business System ("CUBS"). [Doc. No. 52–6 ("Steve Nesbitt Decl.") ¶ 3.]

the caller that he is a debt-collector, he makes the notation "MINI" or "MINI I" in the computer system, indicating that he provided the "mini-Miranda" notification required by the FDCPA. Once Flores enters information into the computer system, he cannot change the previously-entered information.

Around May 2012, Flores called Plaintiff in an attempt to collect Plaintiff's debt. A few days later, Flores called Plaintiff again.[4] Around the same time, Defendant also sent Plaintiff a letter regarding the collection of Plaintiff's debt. Defendant sought to collect the principal amount of Plaintiff's debt plus 10 percent interest.

Sometime after the second phone call, Plaintiff's daughter, Erika Diaz, an attorney, called Flores. On or around June 4, 2012, Defendant received a letter from Plaintiff's daughter. Upon receipt of this letter, Defendant stopped personally contacting or attempting to collect the debts from either Plaintiff or her daughter.[5]

On July 13, 2012, Plaintiff filed this action,[6] and Defendant was served on July 30, 2012. In the operative first amended complaint, Plaintiff alleges violations of the FDCPA,[7] the Rosenthal Act, and negligence. [Doc. No. 49.]

On or around September 25, 2012, Defendant reported Plaintiff's debt to the credit reporting agency. To date, Defendant has neither obtained a judgment against Plaintiff nor garnished her wages.

On August 26, 2013, Plaintiff filed this motion for summary judgment on her claims under the FDCPA and Rosenthal Act. [Doc. No. 51.] Defendant filed an opposition, and Plaintiff filed a reply brief. [Doc. Nos. 52, 53.]

### LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(a). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir.1987).

---

4. As explained in detail below, the parties dispute the contents of both phone conversations.

5. The parties dispute whether Defendant actually stopped its collection efforts and returned the debt to Parkway or simply suspended its efforts and retained the case. [*See* Doc. No. 51–1 at 20; Steve Nesbitt Decl. ¶ 20.]

6. The parties each filed requests for judicial notice. Plaintiff requests that the Court take judicial notice that she filed this action on July 13, 2012. The Court grants this request pursuant to Federal Rule of Evidence 201(b)(2). [Doc. No. 51–3.] Defendant requests that the Court take judicial notice of two statutes: California Civil Code section 3289 and California Family Code section 914(a). The Court takes judicial notice of California Civil Code section 3289 pursuant to Federal Rule of Evidence 201. Because the Court resolves this issue without reference to California Family Code section 914(a), the Court denies as moot Defendant's request for judicial notice of section 914(a). [Doc. No. 52–2.]

7. In the first amended complaint, Plaintiff alleges violations of 15 U.S.C. §§ 1692e, 1692e(5), 1692d, 1692d(6), and 1692f(1).

If the moving party meets its initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). When a party fails to properly address another party's assertions of fact, a court may consider these facts as undisputed. Fed. R.Civ.P. 56(e)(2). If the motion and supporting materials, including facts considered undisputed, show the movant is entitled to summary judgment, the court may grant the motion. Fed.R.Civ.P. 56(e)(3). Summary judgment is not appropriate, however, if the non-moving party presents evidence from which a reasonable jury could resolve the disputed issue of material fact in his or her favor. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Barlow v. Ground*, 943 F.2d 1132, 1136 (9th Cir. 1991).

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. Therefore, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.; see also Demers v. Austin*, 729 F.3d 1011, 1017 (9th Cir.2013). Accordingly, "[s]ummary judgment is not appropriate if a reasonable jury viewing the summary judgment record could find by a preponderance of the evidence that the [non-moving party] is entitled to a favorable verdict." *Narayan v. EGL, Inc.*, 616 F.3d 895, 899 (9th Cir.2010).

## Discussion

### A. Violations of the Fair Debt Collection Practices Act [8]

The underlying purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors ... and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692; *see also Nelson v. Equifax Info. Servs., LLC*, 522 F.Supp.2d 1222, 1232 (C.D.Cal.2007).

Plaintiff alleges that Defendant violated various provisions of the FDCPA when, during phone calls between Flores and Plaintiff, Flores failed to identify himself as a debt collector; threatened to sue Plaintiff; threatened to garnish Plaintiff's wages; and threatened to report Plaintiff's delinquent debt on both her and her husband's credit report, although Defendant never intended to do so. Plaintiff also contends that Defendant retaliated against Plaintiff's filing this action by reporting her delinquent debt to the credit agency. Plaintiff further contends that Defendant violated the FDCPA by seeking to collect interest on Plaintiff's debt.

Defendant asserts that the Court should deny Plaintiff's motion because a genuine issue of material fact exists as to Plaintiff's claims. Defendant disputes the contents of the phone calls. Specifically, Defendant contends that Flores identified himself as a debt collector, provided the required notification, and did not threaten Plaintiff in any way. Defendant also asserts that because Plaintiff did not allege any claim relating to the alleged retaliation for filing this lawsuit in the first amended complaint, the claim is not properly before the

---

8. The parties do not dispute that Plaintiff is a consumer, Plaintiff's debt is a consumer debt and that Defendant is a third-party debt collector under the FDCPA. *See* 15 U.S.C. § 1692(a). [*See* Doc. No. 52 at 13.]

Court. Moreover, Defendant claims that it reported the debt to the credit reporting agency in accordance with its ordinary debt collection practice. Finally, Defendant contends that pursuant to California law, it is entitled to collect interest on a debt.

The Court addresses Plaintiff's claims under the FDCPA in turn.

### 1. Violations of 15 U.S.C. § 1692d

■ Section 1692d of the FDCPA prohibits a debt collector from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. In addition to this general ban, this section also expressly prohibits certain conduct, including "the placement of telephone calls without meaningful disclosure of the caller's identity." 15 U.S.C. § 1692d(6). Although the statute does not expressly define "meaningful disclosure," district courts generally require that "the caller must state his or her name and capacity, and disclose enough information so as not to mislead the recipient as to the purpose of the call or the reason the questions are being asked." *Hosseinzadeh v. M.R.S. Associates, Inc.*, 387 F.Supp.2d 1104, 1112 (C.D.Cal.2005); *see also Costa v. Nat'l Action Fin. Servs.*, 634 F.Supp.2d 1069, 1074 (E.D.Cal.2007).

Plaintiff alleges claims under §§ 1692d and 1692d(6), asserting that during her phone calls with Flores, he violated these sections by failing to identify himself as a debt collector; threatening to garnish her wages, report the debt to a credit reporting agency, and sue Plaintiff; and by reporting the debt in retaliation for filing this lawsuit. To satisfy her burden, Plaintiff submits a declaration and her deposition testimony in which she states that during both phone calls, Flores identified himself only as "Josh" but did not disclose that he was as a debt collector. [Diaz Decl. ¶ 9; Diaz Depo. at 41–42, 60:10–12.] [9] Plaintiff also offers Flores' collection notes from the first phone call in which there is no "MINI" notation to show that he issued the required mini-Miranda warning. [*See* Flores Depo. at 63–64.] According to Plaintiff, Flores also stated during both phone calls that Defendant could garnish Plaintiff's wages, bring a lawsuit against Plaintiff, report the debt to a credit reporting agency to show on both her and her husband's credit report. [Diaz Depo. at 40; 44:9–11.] Only during the second call did Plaintiff realize Flores was a debt collector. [Diaz Decl. ¶ 14.] At that point, Plaintiff told Flores to discuss the matter with her daughter and attorney, Erika Diaz. [Diaz Depo. at 46:3–6.]

Plaintiff also testifies that around the time she filed this suit, she reviewed her credit report, which did not show the debt. [Diaz Decl. ¶ 16.] However, at some point after filing the lawsuit, she reviewed her and her husband's credit report and discovered the debt had been reported on her credit report.[10] [*Id.* ¶ 17.] Plaintiff alleges that Defendant reported the debt to a credit agency in retaliation for filing this lawsuit.

---

9. In referencing page numbers for deposition testimony, the Court refers to the page numbers of the deposition transcript itself.

10. In her declaration, Plaintiff states that after reviewing her and her husband's credit report she "learned that the debt was being reported on my credit report." [Diaz Decl. ¶ 17; *but see* Steve Nesbitt Depo. at 63.] It is unclear whether the debt showed on her husband's credit report. However because Plaintiff's retaliation claim is not properly before the Court, as explained below, whether the debt showed on Plaintiff's credit report only or also on her husband's credit report does not matter for the purpose of this motion.

Defendant disputes that Flores failed to identify himself or threatened Plaintiff in any way during either phone call. Defendant offers various declarations and deposition testimony, including that of Flores. [*See* Doc. Nos. 52–5 ("Flores Decl."), 52–9 ("Flores Depo.").] According to Defendant, Flores called Plaintiff on May 3, 2012 and May 7, 2012. [Flores Decl. ¶¶ 16–18.] During both phone calls, Flores verified that he was speaking with Plaintiff and then identified himself as a debt collector working for Defendant. [*Id.*] Flores further provided Plaintiff with the "mini-Miranda" notice by informing her the name of the creditor and amount of the debt and then asked whether she wanted to settle the account. [*Id.* ¶¶ 16, 18.] In the initial call, Plaintiff stated that her daughter was an attorney and that Plaintiff wanted a verification of the debt. [*Id.* at ¶ 17.] Flores agreed to provide her with a verification of the debt and faxed it to her later that day. [*Id.*] According to Flores, during both phone calls, he never threatened to sue Plaintiff, report Plaintiff or her family members to a credit reporting agency, or garnish Plaintiff's wages. [*Id.* ¶¶ 17, 19.] Flores also offers his collection notes on May 7, 2012, which include a "MINI" notation. [*Id.* at 9.]

Defendant also disputes that it reported the delinquent debt to the credit reporting agency in retaliation for Plaintiff's filing this lawsuit. According to Defendant, it suspended collection efforts on Plaintiff's debt on or about June 4, 2012, the date it received a letter from Plaintiff's daughter. [Steve Nesbitt Decl. ¶ 20; Steve Nesbitt Depo. at 63–64.] Although Defendant retained the case, it recommended that Parkway, the original creditor, file a small claims action against Plaintiff.[11] [Steve

Nesbitt Decl. ¶ 20] Defendant, however, remained ready to resume the collection process in the event Plaintiff failed to pay a judgment, if any, obtained by Parkway. [*Id.*] Further, Defendant reports almost all accounts when it deems that the consumer will not voluntarily settle the account. [Steve Nesbitt Depo. at 67.] Therefore, Defendant claims that it reported Plaintiff's credit as part of this usual collection process, not in retaliation. [*See id.*]

■ With respect to Plaintiff's claims arising from the phone calls between Plaintiff and Flores, each party has submitted contradicting evidence regarding the contents of the phone conversation, specifically whether Flores identified himself and/or threatened to sue Plaintiff, garnish her wages, or report her to a credit reporting agency. Resolving claims arising from the phone calls would require the Court to make a credibility determination, which is inappropriate when ruling on a motion for summary judgment. *See Earp v. Ornoski,* 431 F.3d 1158, 1170 (9th Cir. 2005) ("Summary judgment is an inappropriate vehicle for resolving claims that depend on credibility determinations."). Accordingly, the Court finds that a genuine issue of material fact exists regarding the phone calls between Plaintiff and Flores and therefore denies summary judgment as to claims arising from the phone calls.

■ With respect to Plaintiff's claim that Defendant reported Plaintiff's debt to the credit reporting agency in retaliation for filing this lawsuit, this claim is not alleged in the first amended complaint and therefore is not properly before the Court. *See Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1292 (9th Cir.2000) ("[A]dding a new theory of liability at the summary judg-

---

11. Dr. Maxwell the dentist at Parkway, filed a small claims lawsuit against Plaintiff and her husband for the delinquent debt. The parties settled the matter during small claims mediation on October 19, 2012. [Doc. No. 52–4 ("Maricich Decl.") ¶ 14.]

ment stage would prejudice the defendant who faces different burdens and defenses under this second theory of liability.") (internal citations and quotations omitted). Here, although Plaintiff filed the original complaint before Defendant reported the delinquent debt on September 25, 2012, Plaintiff amended the complaint after she knew that Defendant reported the debt to the credit reporting agency. [*See* Doc. No. 37.] Plaintiff, however, still did not seek to add this retaliation claim. Because Plaintiff had the opportunity to add this claim but did not, the Court will not consider the claim raised for the first time in Plaintiff's motion for summary judgment.

The Court therefore **DENIES** Plaintiff's motion for summary judgment as to her claims under §§ 1692d and 1692d(6).

### 2. Violations of 15 U.S.C. § 1692e

Section 1692e of the FDCPA prohibits a debt collector from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. In addition to this general ban, this section also expressly prohibits:

(4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

. . .

(11) The failure to disclose in the initial written communication with the consumer and, in addition if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt

and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

*Id.*

Plaintiff moves for summary judgment on her § 1692e claims. First, Plaintiff asserts that Flores failed to identify himself as a debt collector in both phone calls, in violation of § 1692e(11). Second, Plaintiff alleges that during both phone calls, Flores threatened to garnish Plaintiff's wages, to sue Plaintiff, and to report Plaintiff's debt to her and her husband's credit agency, although Defendant never intended to do so, in violation of §§ 1692e(4) and 1692e(5).

Plaintiff's claims under § 1692e arise from the phone calls between Plaintiff and Flores. As explained above, the Court finds that genuine issues of material fact exist regarding the contents of the phone calls between Flores and Plaintiff. Accordingly, the Court **DENIES** summary judgment as to Plaintiff's § 1692e claims.

### 3. Violations of 15 U.S.C. § 1692f(1)

Section 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. In addition to the general ban on unfair or unconscionable means, this section expressly prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

Defendant does not dispute that it sought to collect 10 percent interest in

addition to the principal balance of Plaintiff's debt. Pursuant to the FDCPA, Defendant may only impose the 10 percent interest charge if (i) the customer expressly agrees to the charge in the contract creating the debt or (ii) the charge is permitted by law. *See id.; see also McCollough v. Johnson, Rodenburg & Lauinger, LLC,* 637 F.3d 939, 950 (9th Cir.2011); *Pollice v. Nat'l Tax Funding, L.P.,* 225 F.3d 379, 407–08 (3d Cir.2000); *Tuttle v. Equifax Check,* 190 F.3d 9, 13 (2d Cir.1999) (internal citations omitted). "In the absence of an express agreement, whether charges are permissible within the meaning of the FDCPA turns on California law." *Hunt v. Check Recovery Sys., Inc.,* 478 F.Supp.2d 1157, 1161 (N.D.Cal. 2007) (internal citation omitted).

Pursuant to the first category, Plaintiff asserts that Defendant violated § 1692f(1) by attempting to collect an amount not authorized by the agreement between Plaintiff and Parkway creating the debt. Although Plaintiff offers no evidence to support this assertion such as the agreement itself or an affidavit, Defendant has failed to dispute this fact. [*See* Doc. Nos. 52–1, 52–2.] Accordingly, the Court considers the fact as undisputed for the purposes of this motion. *See* Fed.R.Civ.P. 56(e)(2).

Pursuant to the second category, Defendant asserts that section 3289(b) of the California Civil Code authorizes it to collect a 10 percent interest charge in addition to Plaintiff's debt. In its opposition brief, Defendant makes conclusory arguments, asserting that "California Civil Code § 3289 provides that interest at a rate of 10% per annum may be added to any obligation that has been breached.... Parkway Dental is entitled to add interest to the amount owed on Ms. Diaz' [sic] obligation and ARM is entitled to demand that amount during collection." [Doc. No. 52 at 15.] Apart from paraphrasing the statute itself, Defendant cites no authority for this proposition. In its reply brief, Plaintiff contends that section 3289 does not apply here because Defendant admits it has not obtained a judgment to which prejudgment interest would apply. Although it appears that debt collectors in other cases have raised similar arguments, other courts have yet to address whether section 3289 of the California Civil Code permits a debt collector to collect interest on a debt under 15 U.S.C. § 1692f(1). *See, e.g., Palmer v. Stassinos,* 348 F.Supp.2d 1070, 1080 (N.D.Cal.2004); *Hadsell v. CACH, LLC,* No. 12–CV–235, 2013 WL 4517842 (S.D.Cal. Aug. 23, 2013); *Hunt,* 478 F.Supp.2d at 1164.

"Civil Code section 3289 specifies the rate of prejudgment interest in contract cases." *Teachers' Ret. Bd. v. Genest,* 154 Cal.App.4th 1012, 1045, 65 Cal.Rptr.3d 326, 350 (2007). Section 3289 states in its entirety:

(a) Any legal rate of interest stipulated by a contract remains chargeable after a breach thereof, as before, until the contract is superseded by a verdict or other new obligation.

(b) If a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach.

For the purposes of this subdivision, the term contract shall not include a note secured by a deed of trust on real property.

Cal. Civ.Code § 3289 (2013). Therefore, pursuant to section 3289(b), the rate of prejudgment interest that a court can award on a breach of contract judgment is 10 percent per annum unless otherwise stipulated in the contract. *See id.*

█ However, before reaching the *rate* of prejudgment interest in contract

cases, a party must establish the *right* to prejudgment interest, which is governed by California Civil Code section 3287. *See* Cal. Civ.Code § 3287; *see Teachers' Ret. Bd.*, 154 Cal.App.4th at 1045, 65 Cal. Rptr.3d 326. Section 3287 states:

(a) Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt. This section is applicable to recovery of damages and interest from any such debtor, including the state or any county, city, city and county, municipal corporation, public district, public agency, or any political subdivision of the state.

(b) Every person who is entitled under any judgment to receive damages based upon a cause of action in contract where the claim was unliquidated, may also recover interest thereon from a date prior to the entry of judgment as the court may, in its discretion, fix, but in no event earlier than the date the action was filed.

Cal. Civ.Code § 3287. As the Ninth Circuit explained, "[s]ection 3287 provides for an award of prejudgment interest whenever a plaintiff prevails in a breach of contract claim for an amount of damages that is certain or is capable of being made certain by calculation." *Unocal Corp. v. United States*, 222 F.3d 528, 541 (9th Cir. 2000). Thus, pursuant to section 3287, a court's award of prejudgment interest turns on the certainty of damages or their ability to be made certain. *See Safeway*

*Stores, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 64 F.3d 1282, 1291 (9th Cir.1995). To determine whether damages are certain, courts "focus on the defendant's knowledge about the amount of the plaintiff's claim ... did the *defendant* actually know the amount owed or from reasonably available information could the defendant have computed that amount." *Chesapeake Indus.*, 149 Cal.App.3d 901, 907, 197 Cal.Rptr. 348 (1983) (emphasis in original).

■ Once a party establishes the *right* to prejudgment interest—under either section 3287(a) or (b)—the court must then determine the appropriate *rate* of prejudgment interest. Only at this point does section 3289 comes into play. The California Constitution sets the general rate for prejudgment interest at 7 percent per annum *unless* the Legislature sets a different rate up to 10 percent per annum. *See* Cal. Const. art. XV, § 1;[12] *see Teachers' Ret. Bd.*, 154 Cal.App.4th at 1044, 65 Cal. Rptr.3d 326. In section 3289(b), the Legislature set the rate of prejudgment interest at 10 percent per annum for a breach of contract where the contract does not stipulate an interest rate. *See* Cal. Civ. Code § 3289(b). In other words, when a party seeks prejudgment interest on a judgment for breach of contract and the contract itself does not stipulate a rate of interest, section 3289(b) applies and sets the rate of interest at 10 percent per annum. *See id.*

Here, Defendant admits that it has not obtained a judgment—much less a judgment awarding prejudgment interest—against Plaintiff. [Doc. No. 52–1 ¶ 39

---

**12.** Article XV, Section 1 of the California Constitution states: "The rate of interest upon a judgment rendered in any court of this State shall be set by the Legislature at not more than 10 percent per annum ... In the ab-

sence of the setting of such rate by the Legislature, the rate of interest on any judgment rendered in any court of the State shall be 7 percent per annum." Cal. Const. art. XV, § 1.

("ARM has not obtained a judgment against Diaz.").] Accordingly, Defendant has not obtained a *right* to prejudgment interest pursuant to California Civil Code section 3287. Without a judgment for breach of contract awarding prejudgment interest, Defendant cannot seek to collect prejudgment interest on Plaintiff's debt at the rate set forth in California Civil Code section 3289. *See* Cal. Civ.Code §§ 3287, 3289; *see also Teachers' Ret. Bd.*, 154 Cal. App.4th at 1045, 65 Cal.Rptr.3d 326.

Accordingly, the Court finds that Defendant has failed to establish that California Civil Code section 3289 permits a debt collector without a judgment to collect interest on a debt under § 1692f(1).

### 4. Bona Fide Error

Pursuant to § 1692k(c)'s bona fide error defense, "[a] debt collector may not be held liable . . . if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). To qualify for the affirmative defense of bona fide error, the debt collector must demonstrate "that (1) it violated the FDCPA unintentionally; (2) the violation resulted from a bona fide error; and (3) it maintained procedures reasonably adapted to avoid the violation." *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir.2011). "Logically, if a debt collector reasonably relies on the debt reported by the creditor, the debt collector will not be liable for any errors." *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1176–77 (9th Cir.2006). However, this defense "will not shield a debt collector whose reliance on the creditor's representation is unreasonable or who represents to the consumer a debt amount that

is different from the creditor's report." *Id.* Further, the bona fide error defense does not shield a debt collector from a mistake of law. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 581–82, 130 S.Ct. 1605, 176 L.Ed.2d 519 (2010) (holding § 1692k(c) does not encompass mistakes of law); *see also Hunt*, 478 F.Supp.2d at 1170.

Defendant claims that the bona fide error defense shields any mistake regarding the amount of interest it sought to collect from Plaintiff. However, at issue is Defendant's *authority* to collect interest— specifically, whether California Civil Code section 3289 authorizes a debt collector without a judgment to collect interest on Plaintiff's debt. Thus, in order for the bona fide error defense to shield liability, it would have to excuse a mistake of law. The United States Supreme Court expressly declined "to read § 1692k(c) to encompass 'all types of error,' including mistakes of law." *See Jerman*, 559 U.S. at 581, 130 S.Ct. 1605. Accordingly, the bona fide error defense does not apply to Defendant's mistaken interpretation of whether California law permits it to collect an interest charge under § 1692f(1). *See id.* at 587, 130 S.Ct. 1605 ("[B]ona fide errors in § 1692k(c) do not include mistaken interpretations of the FDCPA."); *see also Hunt*, 478 F.Supp.2d at 1170 ("The 'bona fide error' defense does not excuse mistakes of law such as errors resulting from debt collector's reliance on counsel's advice or where the mistake relates to FDCPA requirements.").

Because the bona fide error defense does not apply to mistakes of law, the Court finds that Defendant is not entitled to the bona fide error defense regarding its authority to collect interest under § 1692f(1). The Court therefore **GRANTS** Plaintiff's motion for summary judgment as to her § 1692f(1) claim.

### B. Rosenthal Fair Debt Collections Practices Act

The Rosenthal Act is California's version of the FDCPA, which "mimics or incorporates by reference the FDCPA's requirements ... and makes available the FDCPA's remedies for violations." *Riggs v. Prober & Raphael,* 681 F.3d 1097, 1100 (9th Cir.2012); *see* Cal. Civ.Code § 1788 *et seq.* Accordingly, whether a debt collector's conduct "violates the Rosenthal Act turns on whether it violates the FDCPA." *See Riggs,* 681 F.3d at 1100. Additionally, "[t]he Rosenthal Act's remedies are cumulative, and available even when the FDCPA affords relief." *Gonzales v. Arrow Fin. Servs., LLC,* 660 F.3d 1055, 1069 (9th Cir.2011).

The Court finds that a genuine issue of material fact exists regarding Plaintiff's claims under §§ 1692d and 1692e of the FDCPA, and therefore denies summary judgment as to those claims. As such, the Court also **DENIES** summary judgment as to Plaintiff's corresponding claims under the Rosenthal Act. *See* Cal. Civ.Code § 1788.17. However, the Court grants summary judgment as to Plaintiff's § 1692f(1) claim and therefore **GRANTS** summary judgment as to Plaintiff's corresponding claim under the Rosenthal Act. *See* Cal. Civ.Code § 1788.17.

### CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion for summary judgment.

**IT IS SO ORDERED.**